UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE:     ROY EDWARD INGRAM                          CASE NO. 18-10224
     AND   LEONA GAIL INGRAM

\* \* \* \* \* \* \* \* \*

### DEBTORS' NOTICE OF OBJECTION TO CREDITOR'S CLAIM NO. 3

The Debtors, Roy Edward Ingram and Leona Gail Ingram, have filed an objection to your claim in this bankruptcy case.

**Your claim may be reduced, modified or eliminated.  You should read these papers carefully and discuss them with your attorney, if you have one.**

If you do not want the Court to eliminate or change your claim, then on or before June 6, 2022, you or your attorney must file with the court a typewritten response, either electronically in compliance with L.B.R. 5005-4, or mail to:

U.S. Bankruptcy Court
Western  District of Kentucky
601 West Broadway, Suite 450
Louisville, Kentucky  40202

If you mail your response to the Court for filing, you must mail it early enough so that the Court will receive it on or before the filing deadline of June 6, 2022.

You must also send a copy to

Michael L. Harris
Attorney for Debtors
P.O. Box 459, 204 Public Square
Columbia, Kentucky  42728

If you or your attorney do not take these steps, the Court may decide that you do not oppose the objection to your claim.

DATED:   /S/   MAY 5, 2022                  /S/  MICHAEL L. HARRIS
                                            MICHAEL L. HARRIS
                                            AFFIANT AND ATTORNEY FOR DEBTORS

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE:        ROY EDWARD INGRAM                                    CASE NO. 18-10224
       AND    LEONA GAIL INGRAM

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### *DEBTORS' OBJECTION TO CREDITOR'S CLAIM NO. 3*

Come the Debtors, Roy Edward Ingram and Leona Gail Ingram, by counsel, who hereby object to Claim No. 3 filed by Community Loan Servicing, L.L.C., against the Debtors in the amount of $12,948.84.

As a basis for this motion, Debtor, Leona Gail Ingram, was appointed as Administratrix of the Estate of her step-grandfather, Ray Stewart. Attached hereto as Exhibit "A" is the note that was included with Claim No. 3, which clearly indicates that it was signed by Ray Stewart, and ***not*** by either of the Debtors in this case.

Further, the mortgage that was filed with Claim No. 3, which is attached hereto as Exhibit "B", also shows that the mortgage was signed by Ray Stewart and Judy Stewart, and ***not*** by either of the Debtors, and the mortgage clearly shows that the property in question for the mortgage was conveyed to Ray Stewart, Jr., and Geneva Stewart, as joint tenants with right of survivorship, based on the Deed dated December 16, 1967, and recorded on December 16, 1967, in Deed Book 111, Page 195, in the Office of the Hart County Court Clerk, Commonwealth of Kentucky.

Clearly, the Debtors have no obligation whatsoever on Claim No. 3 that has been filed by Community Loan Servicing, L.L.C., and it is respectfully requested that the submitted order disallowing Claim No. 3.

/S/   MICHAEL L. HARRIS
MICHAEL L. HARRIS
AFFIANT AND ATTORNEY FOR DEBTORS

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

IN RE:     ROY EDWARD INGRAM                           CASE NO:  18-10224
     AND   LEONA GAIL INGRAM

\*     \*     \*     \*     \*     \*

### _CERTIFICATE OF SERVICE OF DEBTORS' NOTICE AND OBJECTION_

\*     \*     \*     \*.     \*     \*

It is hereby certified that I have electronically filed the Debtors' Notice and Objection through the ECF system, which will send a notice of electronic filing to William W. Lawrence, Trustee, 210 Republic Plaza, 200 South Seventh Street, Louisville, Kentucky 40202, and that I mailed a copy of this Notice, Objection and Certificate to the following creditor on the 5th day of May, 2022.

Community Loan Servicing, L.L.C.
c/o Amy E. Gardner
Attorney for Creditor
P.O. Box 165028
Columbus, Ohio  43216

/S/ MICHAEL L. HARRIS
MICHAEL L. HARRIS
HARRIS & HARRIS, P.S.C.
ATTORNEY FOR DEBTORS
204 PUBLIC SQUARE
P.O. BOX 459
COLUMBIA, KENTUCKY  42728
(270) 384-2165

N39783

# Note

| | |
|---|---|
| April 29, 2010 | ELIZABETHTOWN   KY |
| [Date] | [City]   [State] |

399 CAMPGROUND RD

                           BONNIEVILLE   KY   42713

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   20,600.45   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CITIFINANCIAL SERVICES, INC. . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 10.4712 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note. After the Maturity Date established in Section 3, I will pay interest at the interest rate required by this Section 2 or the maximum rate permitted under the then applicable law.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  5th  day of each month beginning on  June      5th , 2010 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 05, 2025 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 181 TOWNE DRIVE  ELIZABETHTOWN KY 42701  or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $      226.83 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make partial Prepayments without paying a Prepayment charge. If I make a full Prepayment within two years from the date of this Note:

[ ] I will not pay a Prepayment charge.

[x] I will pay a Prepayment charge of 3% of the amount of the Prepayment if the Prepayment is made within one year of the date of this Note and 2% of the amount of the Prepayment if the Prepayment is made within two years of the date of this Note.

In any event, I will not pay a Prepayment charge if: (A) I make a full Prepayment after two years from the date of this Note; (B) the Prepayment results from a renewal or refinance of this loan by the Note Holder; or (C) the loan is accelerated due to my default or due to the Note Holder's exercise of any due on sale clause in the Security Instrument securing this Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    10   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be the greater of   5.0 % of my overdue payment of principal and interest or U.S. $     15.00  . I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time. If the Note Holder does not require me to pay all or part of any charge for any overdue or returned payment, it will still have the right to charge the full charge on any other overdue or returned payment. The Note Holder may accept payments after the Maturity Date or after the date the Note Holder requires me to pay immediately in full without being required to renew or extend the loan, and may extend the time for payment after maturity without notice. The Note Holder may delay enforcing any of its other rights under this Note without losing them. The terms of this Note can be waived or changed only in a writing signed by the Note Holder.

 

**EXHIBIT** _A_

Borrower's Initials: _RS_

Page 1 of 2

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**(F) Charge for Returned Payments**

If any payment that I make by check, draft, or similar instrument is returned to the Note Holder unpaid, I will pay a returned payment charge to the Note Holder. The amount of the charge will be U.S. $ 15.00 .

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any one of us can agree to extensions, renewals, or changes in the terms of this Note (which may include releasing security or adding or releasing parties to this Note), without notice to others. Any such agreement will not relieve any of us from responsibility under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. APPLICABLE LAW**

This Note is governed by KENTUCKY law and federal law, as applicable. If any part of this Note is unenforceable, this will not make any other part unenforceable. In no event will I be required to pay interest or charges in excess of those permitted by law.

**12. AUTHORIZATION TO USE CREDIT REPORT**

I authorize Note Holder to obtain, review and use information contained in my credit report in order to determine whether I may qualify for products and services offered by Note Holder. This authorization terminates when my outstanding balance due under this Note, along with any additional amounts that I may owe under the Security Instrument that I am giving to secure this Note, is paid in full. I may cancel this authorization at any time by writing to the following address: CitiFinancial – Customer C.A.R.E. Department, 605 Munn Road, Fort Mill, SC 29715. In order to process my request, I must provide Note Holder my full name, address, social security number and account number.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Ray Stewart_ _____ (Seal)
RAY STEWART                                    - Borrower

_____ (Seal)
                                               - Borrower

_____ (Seal)
                                               - Borrower

04/29/2010          08:32:46          *[Sign Original Only]*

Redacted

FIXED RATE NOTE
KY 201N-1 12/2009          Original (Branch)          Copy (Customer)          Page 2 of 2

Redacted

### ALLONGE TO NOTE

Original Loan Amount: $20,600.45
Note Date:              04/29/2010
Borrower(s):            RAY STEWART
Address:                399 CAMPGROUND RD
                        BONNIEVILLE, KY 42713

#### PAY TO THE ORDER OF

_____

_____

_____

_____

#### WITHOUT RECOURSE

CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, SUCCESSOR BY
MERGER TO CITIFINANCIAL SERVICES, INC., A KENTUCKY CORPORATION

By: _____          Dated: SEP 19 2016 _____
Name: Jessica Barreres
Title:  VICE PRESIDENT

Redacted

**EXHIBIT** *B*

HART COUNTY
**M305   PG153**

—————— [Space Above This Line For Recording Data] ——————

## MORTGAGE

When recorded, ret
Finiti
Finiti Recording Team
Accommodation Recording per Client
7090 Samuel Morse Drive
Columbia, MD 21046

[Redacted]

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)"Security Instrument"** means this document, which is dated April 29, 2010, together with all Riders to this document. *Judy Stewart*
**(B)"Borrower"** is ~~GENEVA STEWART~~ AND RAY STEWART JR, HUSBAND AND WIFE *Geneva Stewart, deceased* . Borrower is the mortgagor under this Security Instrument.
**(C)"Lender"** is CITIFINANCIAL SERVICES, INC. . Lender is a corporation organized and existing under the laws of Kentucky . Lender's address is 181 TOWNE DRIVE  ELIZABETHTOWN KY 42701
Lender is the mortgagee under this Security Instrument.
**(D)"Note"** means the promissory note signed by Borrower and dated April 29, 2010 . The Note states that Borrower owes Lender
TWENTY THOUSAND SIX HUNDRED AND 45/100 DOLLARS
(U.S. $  20,600.45 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 05, 2025 . This Security Instrument secures 150% of the principal amount of the Note, but any amount secured in excess of the amount stated in the second sentence of this paragraph must be a "Protective Advance" as defined by Section 26 hereof (or, if the rate of interest is adjustable, may be interest added to principal, commonly called "negative amortization").
**(E)"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F)"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G)"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider             ☐ Planned Unit Development Rider  ☐ Other(s)[specify] _____
☐ 1-4 Family Rider          ☐ Biweekly Payment Rider

**(H)"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

KENTUCKY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3018   1/01 (rev. 10/01)
KY210M-1 12/09 Original(Recorded)    Copy(Branch)    Copy(Customer)         Page 1 of 13

HART COUNTY
**M305   PG154**

RAY STEWART
04/29/2010

(I)**"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J)**"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K)**"Escrow Items"** means those items that are described in Section 3.

(L)**"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M)**"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N)**"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O)**"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R.Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally relatedmortgage loan" under RESPA.

(P)**"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:   (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County of
HART :

A CERTAIN TRACT OF LAND LYING AND BEING IN HART COUNTY, KENTUCKY, ON THE NORTH SIDE OF GREEN RIVER AND ON THE WEST SIDE OF BONNIEVILLE, KENUTUCKY, AND BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A LARGE STUMP, RUNNING SOUTH 25-1/2 EAST, 18-1/2 POLES TO A STONE; THENCE SOUTH 61 EAST 21-1/2 POLES TO A CHESTNUT; THENCE NORHT 14-1/2 EAST 21-2/5 POLES TO A STONE; THENCE NORTH 67 WEST 19-1/2 POLES TO THE BEGINNING, CONTAINING 2 ACRES, MORE OR LESS. TAX ID:051-00-00-090.00

BEING THE SAME FEE SIMPLE PROPERTY CONVEYED BY GENERAL WARRANTY DEED FROM ROBERT EDWARDS AND GENEVA EDWARDS, ET AL WIFE TO RAY STEWART, JR. AND GENEVA STEWART JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, DATED 12/16/1967 RECORDED 12/16/1967 IN BOOK 111, PAGE 195 IN HART COUNTY RECORDS, COMMONWEALTH OF KY

HART COUNTY
**M305   PG155**

RAY STEWART
04/29/2010

which currently has the address of 399 CAMPGROUND RD ʼ

BONNIEVILLE

Kentucky 42713        ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.

KENTUCKY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3018    1/01 (rev. 10/01)
KY210M-1 12/09  Original(Recorded)    Copy(Branch)  Copy(Customer)            Page 3 of 13

HART COUNTY

**M305    PG156**

RAY STEWART
04/29/2010

If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds")to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

KENTUCKY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3018    1/01 (rev. 10/01)
KY210M-1 12/09  **Original (Recorded)    Copy (Branch)    Copy (Customer)**    Page 4 of 13

HART COUNTY
**M305   PG157**

RAY STEWART
04/29/2010

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.

KENTUCKY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3018    1/01 (rev. 10/01)
KY210M-I 12/09  **Original (Recorded)    Copy (Branch)    Copy (Customer)**                    Page 5 of 13

HART COUNTY
**M305   PG158**

RAY STEWART
04/29/2010

Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.

KENTUCKY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3018    1/01 (rev. 10/01)
KY210M-1 12/09  Original(Recorded)    Copy(Branch)    Copy(Customer)                    Page 6 of 13

HART COUNTY
**M305   PG159**

RAY STEWART
04/29/2010

Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

HART COUNTY
**M305   PG160**

RAY STEWART
04/29/2010

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

HART COUNTY
**M305    PG161**

RAY STEWART
04/29/2010

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.

KENTUCKY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3018    1/01 (rev. 10/01)
KY210M-1 12/09 **Original (Recorded)    Copy (Branch)    Copy (Customer)**                    Page 9 of 13

HART COUNTY
**M305    PG162**

RAY STEWART
04/29/2010

If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.

KENTUCKY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3018    1/01 (rev. 10/01)
KY210M-1 12/09 **Original (Recorded)    Copy (Branch)    Copy (Customer)**              Page 10 of 13

HART COUNTY
**M305    PG163**

RAY STEWART
04/29/2010

If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.

KENTUCKY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3018    1/01 (rev. 10/01)
KY210M-1 12/09  Original (Recorded)    Copy (Branch)    Copy (Customer)                                    Page 11 of 13

HART COUNTY
**M305    PG164**

RAY STEWART
04/29/2010

The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

25. **Taxes and Assessments on Mortgage Insurance Premiums.** If mortgage insurance premiums are required to be paid by Borrower pursuant to Section 10, then in addition to such premiums, Borrower shall pay all taxes and assessments thereon for so long as Borrower is required by Lender to pay the premiums. All taxes and assessments on premiums due and payable by Borrower shall be considered an Escrow Item and shall be paid by Borrower to Lender in the manner provided for Escrow Items in Section 3.

26. **Protective Advances.** This Security Instrument secures not only the initial advance under the Note, but also all Protective Advances. "Protective Advances" mean any advances to maintain and protect the Property and/or protect Lender's rights in the Property made by Lender or by any successors or assigns of Lender, including, without limitation, any sums, with interest, advanced under Sections 5, 9, or 14 hereof: (a) to pay any Escrow Items; (b) to pay any sums secured by a lien or encumbrance on the Property without which payment the secured position of Lender, including the priority of this Security Instrument, or any successor or assign of Lender might be jeopardized; (c) to secure, repair, maintain, protect or preserve the Property, or Lender's interest in the Property and rights under this Security Instrument; or (d) to pay any and all expenses incident to the collection of the indebtedness secured by this Security Instrument and the foreclosure thereof by judicial proceedings, or otherwise, pursuant to Applicable Law, whether the Property is still owned by the Borrower or is owned by a Successor in Interest of Borrower.

To the extent that any Protective Advances are deemed to be "future advances" or "additional indebtedness" within the meaning of KRS 382.520, this Security Instrument secures such future advances or additional indebtedness, provided that the total indebtedness at any one time outstanding shall not exceed 150% of the original principal amount of the Note, with interest thereon, and whether or not evidenced by notes, accounts or obligations of any kind whatsoever. It shall be a default under this Security Instrument if Borrower requests a release, in the manner provided by KRS 382.520, of any portion of the lien securing any of the additional indebtedness secured by this Security Instrument pursuant to KRS 382.520 prior to the date that all of the obligations secured by this Security Instrument have been paid and discharged and the Note and this Security Instrument have been terminated, and Borrower hereby waives any and all right to request such a release to the maximum extent permitted by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
RAY STEWART                     - Borrower

_____ (Seal)
JUDY STEWART                    - Borrower

KENTUCKY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3018    1/01 (rev. 10/01)
KY210M-1 12/09 **Original (Recorded)    Copy (Branch)    Copy (Customer)**                    Page 12 of 13

HART COUNTY
**M305    PG165**

RAY STEWART
04/29/2010

STATE OF KENTUCKY, _Hardin_ County ss:

On this _29_ day of _April_, _2010_, I, _Michelle Faye Volpert_ a Notary Public in and for said county and in said state, hereby certify that _Ray Stewart & Judy Stewart_, whose name(s) _are_ signed to the foregoing conveyance, and who _are_ known to me, acknowledged before me that, being informed of the contents of the conveyance, _the_ executed the same voluntarily and as _they_ act on the day the same bears date.

Given under my hand and seal of office this the _29_ day of _April_, _2010_

My Commission expires: _01/07/2013_    _Michelle Faye Volpert_
                                                Notary Public

This instrument was prepared by: _R. Turney_

---------- (Reserved For Preparation Stamp) ----------

This instrument was prepared by _R W. Turney_
333 W. Vine St., Suite 800, World Trade Center,
Lexington, Kentucky 40507

DOCUMENT NO: 00082362
RECORDED:May 12,2010 02:35:02 PM
TOTAL FEE:    $47.00
COUNTY CLERK: LISA HENSLEY
DEPUTY CLERK: VICKIE F SPRADLIN
COUNTY: HART COUNTY

BOOK: M305    PAGES: 153 - 165

HART COUNTY
**M377    PG357**

When Recorded Return To:
CitiFinancial Servicing, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

**Redacted**

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, SUCCESSOR BY MERGER TO CITIFINANCIAL SERVICES, INC., A KENTUCKY CORPORATION, WHOSE ADDRESS IS C/O CITIMORTGAGE, INC., 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD. 5TH FLOOR,** (Attention: Sagittarius Group), **CORAL GABLES, FL 33146 (800)771-0299, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage was executed 04/29/2010 by RAY STEWART AND JUDY STEWART to CITIFINANCIAL SERVICES, INC. and recorded in <u>Book M305, Page 153 and Doc # 00082362</u> in the office of the Clerk of HART County, Kentucky.
Property is commonly known as: 399 CAMPGROUND RD, BONNIEVILLE, KY 42713.

IN WITNESS WHEREOF, this Assignment is executed on __11, 14__ /2016 (MM/DD/YYYY).
**CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, SUCCESSOR BY MERGER TO CITIFINANCIAL SERVICES, INC., A KENTUCKY CORPORATION**

By: _Susan Schotsch_
    Susan Schotsch
    its VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on __11, 14__ /2016 (MM/DD/YYYY), by Susan Schotsch as VICE PRESIDENT of CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, SUCCESSOR BY MERGER TO CITIFINANCIAL SERVICES, INC., A KENTUCKY CORPORATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Nicole Baldwin_
Nicole Baldwin
Notary Public - State of FLORIDA
Commission expires: 08/05/2020

NICOLE BALDWIN
Notary Public - State of Florida
My Comm. Expires August 5, 2020
Commission # GG004850

Document Prepared By: _P.B.G._

P. Branden Gross, Esq., Morgan & Pottinger, P.S.C., 175 E. Main Street, Suite 200, Lexington, KY 40507 (859) 253-1900
(Prepared without benefit of title examination/review)

**Redacted**

DOCUMENT NO: 107600
RECORDED:November 30,2016  08:14:00 AM
TOTAL FEES:    $13.00
COUNTY CLERK: HART COUNTY CLERK
DEPUTY CLERK: LISA ANN HENSLEY
COUNTY: HART COUNTY
BOOK: M377    PAGES: 357 - 357

## State of Indiana
## Office of the Secretary of State

Foreign Registration Amendment
of

# BAYVIEW LOAN SERVICING, LLC

I, CONNIE LAWSON, Secretary of State, hereby certify that an Registration Amendment of the above Foreign Limited Liability Company has been presented to me at my office, accompanied by the fees prescribed by law and that the documentation presented conforms to law as prescribed by the provisions of the Indiana Code.

The name following said transaction will be:

### COMMUNITY LOAN SERVICING, LLC

NOW, THEREFORE, with this document I certify that said transaction will become effective Wednesday, September 30, 2020.



In Witness Whereof, I have caused to be affixed my signature and the seal of the State of Indiana, at the City of Indianapolis, October 01, 2020

*Connie Lawson*

CONNIE LAWSON
SECRETARY OF STATE

2003092400021 / 8738097

To ensure the certificate's validity, go to https://bsd.sos.in.gov/PublicBusinessSearch

Approved and Filed
2003092400021/8738097
Filing Date: 10/01/2020
Effective :09/30/2020 11:56
CONNIE LAWSON
Indiana Secretary of State



**FOREIGN REGISTRATION AMENDMENT**
State Form 56365 (R4 / 6-19)

Indiana Code 23-0.5-5-4
23-0.5-9-27

FILING FEE: $30.00

| |
|---|
| The undersigned, desiring to amend the registration of a foreign entity on file with the Secretary of State pursuant to the provisions of Indiana Code 23-0.5-5-4, executes the following Foreign Registration Amendment. |

### ARTICLE I – ENTITY INFORMATION

Current legal name of the entity
**Bayview Loan Servicing, LLC**

Current alternate name of the entity *(if any)*

Date the foreign entity registered with the Secretary of State's office *(month, day, year)*
09/23/2003

Current entity type
limited liability company

Current jurisdiction of formation
DE

### ARTICLE II – NEW ENTITY INFORMATION
*Please complete only the sections pertaining to the information that has changed.*

*Please note: If the entity changing its name is a Foreign Master LLC, Articles of Designation changing the name of each associated Series must be submitted to the Secretary of State's office along with this Amendment.*

New legal name of the entity
Community Loan Servicing, LLC

New alternate name of the entity

New jurisdiction of formation

If the foreign entity is a Foreign Limited Liability Company that wishes to become a Foreign Master LLC, please provide the name of the Foreign Master LLC. *(The name must include the words Limited Liability Company-S, LLC.-S or LLC-S.)*
Name of the Foreign Master LLC

The Master LLC is authorized to designate one or more series.

If the foreign entity is a Foreign Master LLC that wishes to become a Foreign Limited Liability Company, please provide the name of the Foreign Limited Liability Company. *(The name must include the words Limited Liability Company, L.L.C. or LLC.)*
Name of the Foreign Limited Liability Company

This Limited Liability Company removes the statement from its Registration Statement that it is authorized to designate one or more series.
By filing this Amendment, all associated series to the Master LLC will be dissolved.

New street address:
| Number and street | City | State | ZIP code |
|---|---|---|---|
| | | | |

### ARTICLE III – REGISTERED AGENT INFORMATION

*To determine if your Registered Agent is a Commercial Registered Agent (CRA), go to INBIZ.in.gov.*

Provide either commercial registered agent or noncommercial registered agent information below.

| ☑ Commercial registered agent | Name of registered agent *(Do not provide address.)* Corporation Service Company |
|---|---|

OR

| ☐ Noncommercial registered agent | Name of registered agent |
|---|---|

| Address *(number and street) (A P.O. Box is not acceptable unless accompanied by a Rural Route number.)* | City | State IN | ZIP code |
|---|---|---|---|
| | | | |

*(OPTIONAL)* E-mail address of the registered agent at which the registered agent will accept electronic service of process

☑ By checking the box, the Signator(s) represent(s) that the Registered Agent named in the Foreign Registration Amendment has consented to the appointment of Registered Agent.

RECEIVED
IND. SECRETARY OF STATE

SEP 30 2020

Connie Lawson

Approved and Filed
2003092400021/8738097
Filing Date: 10/01/2020
Effective :09/30/2020 11:56
CONNIE LAWSON
Indiana Secretary of State

In Witness Whereof, the undersigned duly authorized representative of the foreign entity executes this Foreign Registration Amendment and verifies, subject to penalties of perjury, that the statements contained herein are true, this __28th__ day of __Sept.__, 20 __20__.

| Signature | |
| --- | --- |
| Printed name<br>Sean O'Neil | Title<br>Authorized Person |



Approved and Filed
2003092400021/8738097
Filing Date: 10/01/2020
Effective :09/30/2020 11:56
CONNIE LAWSON
Indiana Secretary of State

# Delaware

## The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "COMMUNITY LOAN SERVICING, LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTY-EIGHTH DAY OF SEPTEMBER, A.D. 2020.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "COMMUNITY LOAN SERVICING, LLC" WAS FORMED ON THE EIGHTH DAY OF SEPTEMBER, A.D. 2003.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE BEEN PAID TO DATE.

RECEIVED
IND. SECRETARY OF STATE

SEP 3 0 2020

Jeffrey W. Bullock, Secretary of State

3700808  8300
SR# 20207506960
You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 203743996
Date: 09-28-20

This Rider Amends the Note Entered Into On Date Below

## Agreed Rate Reduction Rider

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | **Redacted** |
|---|---|---|
| RAY STEWART<br>399 CAMPGROUND RD<br>BONNIEVILLE KY 42713 | CITIFINANCIAL SERVICES, INC.<br>181 TOWNE DRIVE<br>ELIZABETHTOWN KY 42701 | Date of Loan<br>04/29/2010 |

Borrower has agreed to pay the rate of interest set forth in the Note (hereinafter referred to as "the Note" and/or the "Note Rate"), until the full amount of principal has been paid. However, if on any one of the second, third or fourth anniversaries of the scheduled due date of the first full installment payment due date under the Note (each, an "Anniversary Date") Borrower has demonstrated a Good Payment History, Lender agrees to decrease the Note Rate to ___9.97___ %. Borrower will be deemed to have demonstrated a "Good Payment History" if Borrower: (a) has made each of the most recent 24 consecutive required monthly payments before the date the next payment was due; (b) has never been late by 91 days or more in making any required monthly payment; (c) neither Borrower nor Co-Borrower has filed petitions in bankruptcy during the term of the loan; and (d) no provision of the Note has been modified prior to the Anniversary Date. Modifications to the Note include extension or deferment of a scheduled payment, legal action with respect to enforcement of the Note or the Security Instrument given by Borrower to secure the Note, and an adjustment of the loan terms. For the purposes of this Agreed Rate Reduction Rider, the required monthly payment shall be the principal and interest payment due under the Note together with the required monthly escrow payment (including any shortage spread), if applicable. If Borrower demonstrates a Good Payment History, the new Note Rate will take effect one month after the earliest Anniversary Date on which Borrower has demonstrated a Good Payment History ("Rate Reduction Date"). Beginning with Borrower's first monthly payment after the fourth Anniversary Date, Borrower will pay the new amount established by Lender as the monthly payment until the Maturity Date. Lender will decrease Borrower's Note Rate only one time during the term of the loan, provided Borrower demonstrates a Good Payment History on any one of the second, third, or fourth Anniversary Dates.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Agreed Rate Reduction Rider.

_Ray Stewart_
Borrower

_4/29/2010_
Date

_____
Co-Borrower

_____
Date

**Redacted**

Original (Branch)        Copy (Customer)

**REPRESENTATION OF PRINTED DOCUMENT**



**BAYVIEW**
LOAN SERVICING
P.O. Box 331409
Miami FL 33233-1409

**Redacted**

RAY STEWART
PO BOX 143
BONNIEVILLE KY 42713

**ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT**

| | |
|---|---|
| Analysis Date | 12/06/17 |
| Account Number: | Redacted |

Customer Service: 1-800-457-5105
Mon-Fri, 8:00 a.m. to 7:00 p.m., EST
www.bayviewloanservicing.com

**Payment from Last Escrow Analysis**
| | |
|---|---|
| Principal & Interest | $219.18 |
| Escrow/Impound | $55.20 |
| | $274.38 |

New Payment Effective 03/05/18
| | |
|---|---|
| Principal & Interest | $219.18 |
| Escrow/Impound | $55.20 |
| **Total New Payment** | **$274.38** |

## PAYMENT CALCULATIONS AND ESCROW ACTIVITY FOR THE NEXT 12 MONTH ESCROW CYCLE

For quality assurance and to comply with federal regulations, Real Estate Settlement Procedures Act (RESPA), your escrow account is reviewed at least once a year to determine that sufficient funds are available to pay your taxes and/or insurance. If the taxes and /or insurance amounts we pay from your escrow account change during the year, then the amount we are required to collect may also change. If this occurs, we suggest you contact your tax authority or insurance agent directly for an explanation of the change in your bill.

### ESCROW DISBURSEMENTS

**Current Anticipated Disbursements**
This year, we anticipate that payments from your account will equal $662.41.

| | |
|---|---|
| HAZARD INSUR | 628.11 |
| COUNTY TAX | 34.30 |
| Annual Disbursements | $662.41 |

**Escrow Payment Calculation**
$662.41 / 12 months = $55.20

| | |
|---|---|
| Current Escrow Balance | 241.67 |
| Payments Not Yet Made | 110.40 |
| Disbursements Not Yet Made | 0.00 |
| Beginning Projected Balance | $352.07 |

**Calculation of Escrow Adjustment**
| | |
|---|---|
| Beginning Projected Balance | 352.07 |
| Beginning Required Balance | 352.11 |
| Escrow Shortage | $.04 |

### PROJECTED ESCROW ACTIVITY FOR THE NEXT 12 MONTH ESCROW CYCLE

Your actual starting escrow balance is $352.07. According to your projected escrow activity, you are required to have a starting escrow balance of $352.11. Therefore, you have a shortage of $0.04.

| Month | Anticipated Payments To Escrow | Anticipated Payments From Escrow | Description | Required Balance | Actual Balance |
|---|---|---|---|---|---|
| | | | STARTING BALANCE | 352.11 | 352.07 |
| Mar 18 | 55.20 | .00 | | 407.31 | 407.27 |
| Apr 18 | 55.20 | .00 | | 462.51 | 462.47 |
| May 18 | 55.20 | .00 | | 517.71 | 517.67 |
| Jun 18 | 55.20 | .00 | | 572.91 | 572.87 |
| Jul 18 | 55.20 | .00 | | 628.11 | 628.07 |
| Aug 18 | 55.20 | .00 | | 683.31 | 683.27 |
| Sep 18 | 55.20 | 628.11 | HAZARD INSUR | 110.40 | 110.36LP |
| Oct 18 | 55.20 | .00 | | 165.60 | 165.56 |
| Nov 18 | 55.20 | 34.30 | COUNTY TAX | 186.50 | 186.46 |
| Dec 18 | 55.20 | .00 | | 241.70 | 241.66 |
| Jan 19 | 55.20 | .00 | | 296.90 | 296.86 |
| Feb 19 | 55.20 | .00 | | 352.10 | 352.06 |
| TOTAL | $662.40 | $662.41 | | | |

Under the Federal Law (RESPA) or applicable state law, a cushion in your escrow account is permitted (excluding M P/PMI). The lowest (LP) required escrow balance for the next 12 months is scheduled to be $110.40 which is 1/6 of the anticipated escrow account installment.

*** CONTINUED ON REVERSE ***

### IMPORTANT MESSAGES

If you are represented by an attorney, please notify us and provide this correspondence to your attorney.

▼ DETACH COUPON HERE ▼

### ESCROW PAYMENT COUPON

**BAYVIEW**
LOAN SERVICING

RAY STEWART

Loan Number: Redacted
Payment Due Date: 03/05/18

BAYVIEW LOAN SERVICING, LLC
P.O. BOX 4425
CORAL GABLES FL 33146-4425

Escrow Shortage Payment Options
☐ **Pay Lump Sum** — $0.04
New Monthly Mortgage Payment Amount — $274.38

or

☐ **Add Shortage to Monthly Mortgage Payment**
New Monthly Mortgage Payment Amount — $274.38

INTERNET REPRINT

Case 18-10224-jal    Doc 41    Filed 05/05/22    Page 24 of 24

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT
### ACCOUNT HISTORY

This is a statement of your actual escrow account transactions beginning March 2017 and ending December 2017. Next to the Actual Activity is the Anticipated Activity. Anticipated Activity represents the transactions we had projected as occurring during this cycle. By comparing the actual escrow payment with the previous projections listed, you can determine where a difference may have occurred. We are providing it to you for informational purposes. It does not require any action on your part.

Your anticipated low point may or may not have been reached based on one or more of the following factors:

| PAYMENT(S) | TAXES | INSURANCE |
|---|---|---|
| • Monthly payment(s) were received less than OR greater than expected | • Tax rate and/or assessed value changed | • Premium changed |
| • Monthly payment(s) were received earlier OR later than expected | • Exemption status lost or changed | • Coverage changed |
| • Previous overage was returned to escrow | • Supplemental/Delinquent tax paid | • Additional premium paid |
| • Previous deficiency/shortage not paid entirely | • Tax bill paid earlier OR later than expected | • Insurance bill paid earlier OR later than expected |
| | • Tax installment not paid | • Premium was not paid |
| | • Tax refund received | • Premium refund received |
| | • New tax escrow requirement paid | • New insurance escrow requirement paid |
| | | • Force placed insurance premium paid |

| MONTH | PAYMENTS PROJECTED | PAYMENTS ACTUAL | DISBURSEMENTS PROJECTED | DISBURSEMENTS ACTUAL | DESCRIPTION | PROJECTED ESCROW ACCOUNT BALANCE | ACTUAL ESCROW BALANCE |
|---|---|---|---|---|---|---|---|
| Mar 17 | 55.20 | 55.20 | 0.00 | 0.00 | | 407 31 | 407.28 |
| Apr 17 | 55.20 | 55.20 | 0.00 | 0.00 | | 462 51 | 462.48 |
| May 17 | 55.20 | 55.20 | 0.00 | 0.00 | | 517.71 | 517.68 |
| Jun 17 | 55.20 | 55.20 | 0.00 | 0.00 | | 572 91 | 572.88 |
| Jul 17 | 55.20 | 55.20 | 0.00 | 0.00 | | 628.11 | 628.08 |
| Aug 17 | 55.20 | 55.20 | 0.00 | 628.11* | HAZARD INS | 683 31 | 55.17 L |
| Sep 17 | 55.20 | 55.20 | 628.11 | 0.00* | HAZARD INSUR | 110.40 | 110.37 |
| Oct 17 | 55.20 | 55.20 | 0.00 | 0.00 | | 165 60 | 165.57 |
| Nov 17 | 55.20 | 55.20 | 34.30 | 34.30 | COUNTY TAX | 186 50 | 186.47 |
| Dec 17 | 55.20 | 55.20 | 0.00 | 0.00 | | 241.70 | 241.67 |
| TOTAL | $552.00 | $552.00 | $662.41 | $662.41 | | | |

An asterisk indicates a difference from a previous estimate either in the date or the amount.

Under the Federal Law (RESPA) or applicable state law, the lowest monthly escrow balance should be no less than $110.40 or 1/6 of the anticipated escrow account payment. Your actual lowest escrow balance was $55.17.

Over this period, an additional $0.00 was deposited into your escrow account for the interest on escrow.

Should you require additional information, please call our toll free number, 1-800-457-5105.